No. 28,556.

HARPER BAKER, *Appellant,* v. J. W. CRAIG et al., Partners doing business as the WIZARD OIL COMPANY, *Appellees.*

(275 Pac. 216.)

Opinion filed March 9, 1929.

*F. S. Jackson, James E. Smith,* both of Topeka, and *Thomas C. Forbes,* of Eureka, for the appellant.

*Robert C. Foulston, Lester L. Morris, P. D. Gardiner, O. W. Helsel, James A. Conly* and *George W. Gardner,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the plaintiff from the ruling of the trial court in sustaining a demurrer to his petition,

consisting of three counts. The first count is upon an oral contract and to recover damages resulting from the breach thereof by depriving the plaintiff of the use of certain well-drilling tools and the depreciation on the value of them and the loss of tools stolen and destroyed. The second count is based upon a tort, describing the same situation as plead in the first count in language necessary and appropriate to make the same general statement of facts a tort. The third count is for malicious prosecution, involving and concerning the same subject matter. Each cause of action concludes with an allegation of the same amount of damages. A careful distinction is made in the three separate counts to clearly present the same general matter, with the evident thought of having three different avenues to one recovery by determination of jury, or possibly by timely election.

The petition sets out the substance of the oral contract and the pleadings and decisions in three former suits between the same parties. Baker, the plaintiff herein, was an experienced oil-well driller, but without equipment or funds. The four defendants were associated together as partners composing the Wizard Oil Company, controlling a large acreage of oil and gas leases on which they desired to drill several wells. The oral contract was briefly to the effect that the oil company would purchase a complete string of tools to be used to drill wells on its leases; that Baker, after drilling the first well, was to get $3 per foot, to be applied on account of the purchase price of the tools, and when the purchase price was thus fully paid the tools were to become his. This arrangement was made November 25, 1919. Shortly thereafter a similar oral contract was made for a second string of tools, the total original cost of both strings being $25,500. Under this arrangement work progressed until seven wells were finished; and a disagreement arose as to the settlement. The oil company ordered Baker off the leased property and denied him the use of the tools. On May 29, 1921, the oil company procured an order enjoining him from using the tools or interfering with the possession of them by the oil company. The injunction bond was in the sum of $2,500, which was later increased to $5,000. On June 7, 1921, the plaintiff commenced a mechanic's lien action to recover what he claimed to be due him from the oil company in addition to the purchase price of both strings of tools, viz., the sum of $18,000. In the injunction suit Baker answered denying generally the allegations of the petition, and by way of cross peti-

tion alleged that he was the owner of both strings of tools, and was being greatly damaged by being deprived of the use and possession of them. In the mechanic's lien suit the oil company denied generally the allegations of the petition, and by way of cross petition gave the details of the oral agreement, and alleged that Baker was to be charged with certain amounts expended on the wells and was to be credited with the difference between such expense and his earnings on the purchase price of the tools; that the expenses on the wells exceeded his earnings by $26,000.

On March 11, 1926, the oil company filed a motion in the injunction suit asking that the petition and answer and cross petition in it be dismissed because the same matters and issues were involved in it as were in the mechanic's lien case. The court never acted on this motion, but in the absence of both parties on November 20, 1926, dismissed the injunction action without prejudice for want of prosecution. On June 13, 1927, the court approved the report of the referee in the mechanic's lien case, finding Baker to be the owner of both strings of tools, and rendering judgment in his favor for the possession of them and giving him a judgment against the oil company on his account for $2,800.

In August, 1927, Baker commenced an action on the injunction bond and recovered a judgment against the oil company and the sureties on the bond in the sum of $5,000 on November 25, 1927. No appeal was taken from this judgment nor the one in the mechanic's lien case, but both were promptly paid. This action was commenced December 19, 1927.

Our attention is called not only to the similarity but to the use of almost identical language in the action on the injunction bond and the first and second counts of the petition in this case with reference to the items of recovery, viz., damages for depreciation in value of the tools, loss of tools having been stolen and removed, and for the deprivation of the use of the tools. Plaintiff bases his loss and right to damages in the first count where a breach of contract is alleged, in the second where a tort or conversion is alleged, and in the third where malicious prosecution is alleged, not only on the procuring of the injunction by the oil company, depriving the plaintiff of the possession and use of the tools, but also upon the answer and cross petition of the oil company in the mechanic's lien suit. It is not usual that one is censurable or made subject to damages by reason of making a defense in an action brought against

him, even if unsuccessful in such defense, but whether the oil company is thus made liable in these transactions is not so important when we note that the injunction suit was instituted prior to the mechanic's lien suit, and from the injunction suit the oil company cannot escape any of the liability incident thereto, whether recoverable on the bond, by action for breach of contract, tort, or malicious prosecution. We need not here decide whether the mechanic's lien action involved the ownership of the tools or the liability of the oil company for the deprivation of the tools by reason of its motion to dismiss the injunction action because it presented the same issues as contained in the mechanic's lien action. The fact remains that the injunction order deprived Baker of the use of the tools, and the injunction was in force when the mechanic's lien action was commenced, so that the plaintiff's causes of action are complete in this respect as based on the deprivation by reason of the injunction; and the averments as to answer and cross petition in the mechanic's lien action could do no more at most than to intensify and augment the claims of the breach, tort and malicious prosecution.

The first question, therefore, for our consideration here is whether or not the first and second causes of action are sufficient to entitle plaintiff to recover an amount in addition to the amount already recovered by him on the injunction bond. We think not, on the theory that the injunction bond is designed to cover all damages the party enjoined can possibly sustain. Our own statute providing for an injunction bond (R. S. 60-1110) states that it is required to be given "to secure to the party injured the damages he may sustain if it be finally decided that the injunction ought not to have been granted." In the case of *Jacobs v. Greening*, 109 Kan. 674, 202 Pac. 72, it was held:

"No action for the wrongful procurement of a restraining order (not brought upon a bond) will lie without a showing of malice." (Syl. ¶ 2.)

This seems to be the general rule, to which there appear to be exceptions made in some jurisdictions.

"It is a general rule that damages caused by an injunction, erroneously granted in the exercise of jurisdiction where the proceedings have been regular, cannot be recovered from the party who obtained the writ in the absence of a bond or undertaking, unless it be shown that the transaction was malicious and without probable cause, in which case an action for malicious prosecution will lie though it is held that to justify a recovery want of probable cause must be clearly shown." (14 R. C. L. 479.)

"A common-law action may be brought, independently of an injunction bond, to recover damages resulting from the suing out of an injunction maliciously and without probable cause." (32 C. J. 464.)

"While under some statutes the rule may be otherwise, the general rule is that no recovery can be had in excess of the penalty of the bond, even though the actual damages exceed that amount, and the court has no power to make an allowance beyond that amount for disbursements." (32 C. J. 466. See, also, note in 45 A. L. R. 1517; note in L. R. A. 1916E, 1284.)

It was stated above that the defense made by the oil company in the mechanic's lien case could not afford a separate basis on which either the first or second cause of action could rest, but the skillful and careful pleading of the causes of action in this case is proof in itself of the evident intention of the pleaders to rely upon the allegations concerning the defense made by the oil company in the mechanic's lien case, and therefore deserves more consideration than above given. Such resistance of the rights of Baker to recover the amount due him in addition to the purchase price of the tools, even to the extent of the company being terribly mistaken as to what was earned and due him, cannot reasonably be said to have constituted a breach of the contract or amount to the commission of a tort. This feature of the case should support itself. If it needs the support of the injunction suit, then it must follow the above holding as to the injunction allegations and be limited to the amount of the injunction bond. If not, it must be able to stand alone on its own footing. In other words, eliminating from these two causes of action all references to the injunction suit, then would the remaining allegations constitute causes of action on breach of contract and in tort? If they would, then when did such causes of action accrue? The answer is plain: The day the oil company filed its answer and cross petition, October 12, 1921. The injunction did not prevent or hinder the plaintiff from bringing his action at any time; besides, it was not necessary to wait for the determination of the action in which this objectionable defense was filed. The contract was breached and the tort committed when the unwarranted defense was interposed. Nothing has occurred since except the decision in the case, which only serves to further convince the plaintiff that the defense was in violation of the contract and tortious.

This case was commenced more than six years after such answer and cross petition was filed and would, as far as this feature is concerned, be barred by the statute of limitations. We have treated

this part of the case as if it would in itself constitute good causes of action on contract and in tort, but there is a serious question about it in that respect.

"Damages occasioned by the suit independent of the injunction are not recoverable. The recovery is confined to damages arising from the operation of the injunction itself." (32 C. J. 465.)

We conclude that the first and second causes of action cannot be maintained for damages for the wrongful procurement of an injunction order beyond and in addition to the amount provided by the injunction bond, without a showing of malice and want of probable cause, which these two causes do not contain; and if such action can be based upon the defense interposed by the oil company in an independent case, then it is barred by the statute of limitations.

As to the third cause of action for malicious prosecution, there is no question about it being barred by the one-year statute of limitations. The injunction action was dismissed November 20, 1926, and this action was commenced December 19, 1927—more than one year thereafter. It was less than one year from the decision in the mechanic's lien case, but no good reason has been assigned why the statute would not begin to run as soon as the plaintiff was free from the restraining order of the court to collect his additional damages because of the malicious conduct of the oil company. There was nothing in this case that depended upon the result of a pending case or which could be attacked with the defense of another suit pending, as there was in the Algeo case in 125 Kan. 245, 263 Pac. 1077, or other estate or partnership cases cited. The rule applies here that was followed in the cases of *Rodman v. Railway Co.*, 65 Kan. 645, 70 Pac. 642, and *Home v. Bergin*, 127 Kan. 593, 274 Pac. 284.

Appellant urges that there was a period of 200 days intervening between the dissolution of the injunction and his getting possession of the tools at the close of the mechanic's lien case, but, as stated above, he did not need to wait on the decision in that case. It is true the bond did not cover damages incurred after the dismissal of the injunction suit, but plaintiff was at liberty to proceed at once with an action of this kind or a replevin action to recover his property. Besides, there was no legal interference to his taking possession of the goods during that short period. The allegations do not show any demand or attempt to get possession of them during that period. We think this short period is not specifically covered in the pleadings so as to come within any one of the causes of action.

As to the lost and stolen tools not returned, we conclude that the purpose of the injunction bond is to cover such loss as well as depreciation in value and deprivation of the use, except, as stated above, upon a showing of malice.

We find no error in the sustaining of the demurrer to each of the three causes of action.

The judgment is affirmed.